GERTRUDE T. CHMIEL, f/k/a GERTRUDE T. SANETRA, Plaintiff-Appellee, *v.*
HAROLD P. PIERCE, Defendant-Appellant.
(No. 71-323;

Second District—January 17, 1973.

Dalton P. Grief, of Wexler, Kane & Rosenzweig, of Chicago, for appellant.

Robbins, Coe, Rubinstein & Shafran, Ltd., of Chicago, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This is a guest passenger case. A trial was had before a jury which returned a verdict of $12,500 for the plaintiff.

The plaintiff was employed where the defendant was the General Supervisor. They had both worked at the place of employment on Saturday morning, March 8, 1969. On the afternoon of that day the defendant picked up the plaintiff in his car and they drove to visit friends or relatives in Grayslake. They left Grayslake around 2:00 o'clock on Sunday morning, March 9th, and were returning by the Illinois toll road. In approaching the toll booth about 3:00 A.M. the defendant struck the abutment with his vehicle which tipped over and skidded some 27-28 feet. The plaintiff was asleep and as a result of the accident was taken to the hospital, having suffered a broken jaw, facial and dental injuries.

The testimony relating to the accident is in conflict. Louis Molinaro was the tollway attendant and he testified that the defendant's vehicle approached the toll gate at a speed estimated by him at 70 m.p.h., and that it did not appear that the defendant slowed down before he struck the divider. He further testified that he watched the car approach from a mile and a half away and that prior to the impact the defendant swerved his car from one lane to another and into the abutment. The State trooper testified that defendant's car had knocked the coin machine across the lane, the car was "completely tore up" and that he did not find any skid marks.

The defendant testified that he reduced his speed and that he was going but 15-20 m.p.h. at the time he hit the abutment. He further testified he was fumbling in his pocket to get change and that another car appeared to be headed for the same lane he was in and was closing in on him. The toll gate attendant however, stated that no other vehicle was present at this early hour in the morning at the time of the accident.

This being a guest passenger suit, the principal and main question presented is whether or not the defendant was guilty of wilful and wanton conduct. Under the guest statute (Ill. Rev. Stat. 1969, ch. 95½, sec. 10—201), the defendant contends that the facts herein do not justify finding of wilful and wanton negligence on his part, and that the verdict is against the manifest weight of the evidence. In support of this contention the defendant has cited a number of cases involving single car guest passenger accidents. Defendant has further stated that "each case must depend upon its own peculiar facts." In *Clarke v. Storchak* (1944), 384 Ill. 564, 52 N.E.2d 229, the defendant's vehicle went upon the dirt portion of the shoulder as he was driving 45 m.p.h. The jury found no wilful or wanton negligence. In *Fosdick v. Servis* (1963), 40 Ill.App.2d 363, 189 N.E.2d 538, the Appellate Court reversed the jury, holding there was no evidence of wilful and wanton misconduct where the plaintiff "blacked out." In *Pritchett v. Rich* (1957), 14 Ill.App.2d 215, 144 N.E.2d 173, the defendant was unable to negotiate a curve; the car left the highway and hit a tree. The appellate court again set aside the verdict holding there was no consciousness on the part of the defendant that would amount to wilful and wanton conduct. In *Vance v. Picken* (1968), 93 Ill.App.2d 294, 235 N.E.2d 266, the car left the road and struck a tree and the guest was injured. The trial court directed a verdict and the appellate court in affirming the action of the trial judge held that speed alone was not sufficient to make a jury consider the question of wilful or wanton conduct based on the circumstantial evidence adduced at the trial. This court does not believe that any of these and the other cases cited by the defendant are controlling in the factual situation before us. As counsel for plaintiff has suggested, the cases cited by defendant do not cover situations where a visible pre-existing danger existed. In the instant case, the brightly lighted toll booths and appurtenances thereto constituted a readily apparent danger to an approaching vehicle.

In *Bartolucci v. Falleti* (1943), 382 Ill. 168 at 174, 46 N.E.2d 980 at 983, the Supreme Court in discussing the necessary elements of a wilful and wanton act, stated:

> "* * * Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to conse-

quences, makes a case of constructive or legal wilfulness. *Streeter v. Humrichouse,* 357 Ill. 234, 191 N.E. 684; *Jeneary v. Chicago & Interurban Traction Co.,* 306 Ill. 392, 138 N.E. 203."

■■ The case before us is a question of fact as to whether or not the driving of the defendant in the early morning hours, and his impact with a tollway divider or abutment does or does not constitute wilful and wanton conduct. The trial court found that it was a jury question and the jury in turn found that defendant's actions brought it within the wilful and wanton provisions of the guest statute above cited. Unlike many of the cases cited by defendant, we have before us a disinterested third party, the toll collector, who testified as to the excessive speed of the defendant and his swerving into the abutment. In this respect, this case differs from all cases cited in that the incident was observed by a third party. Whether an act is wilful and wanton depends upon the factual situation in each case, and normally is within the province of the jury to make such a determination. (*Rosbottom v. Hensley* (1965), 61 Ill.App.2d 198, 209 N.E.2d 655 at 661; *Todd v. Borowski* (1960), 25 Ill.App.2d 367 at 375, 166 N.E.2d 296.) Only in the exceptional case is this not a question for the jury. *Lessen v. Allison* (1960), 25 Ill.App.2d 395, 166 N.E.2d 806.

■■ We have repeatedly stated that we will not substitute our opinion for that of the court or the jury where the facts are in controversy.

■■ In addition to the main question presented, the defendant contends that he should have been allowed to present evidence showing the close relationship between the defendant and the plaintiff. Defendant states: "The rule is well settled in Illinois that where there are no eye witnesses to an accident, it is permissible to introduce testimony of the habits and due care of the injured person." In the instant case it is to be expressly noted that there was an eyewitness to this accident and this court does not feel that the relationship of the defendant with the plaintiff had any bearing on the jury's verdict one way or the other.

■■ Lastly, the defendant contends that IPI instruction No. 20.01.01 of the Illinois Pattern Jury Instructions should not have been given because this instruction covers excessive speed, application of brakes, failure to keep a lookout, and failure to keep the automobile under control. Under the facts of this case all of these elements were properly before the jury for their consideration and the instruction was proper. For the reasons given, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

SEIDENFELD and ABRAHAMSON, JJ., concur.